UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| | ) Case No. 09-cr-233 |
| v. | ) ) Judge John W. Darrah |
| LOUIS L. JAVELL and AYSHA M. ARROYO, | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Defendants, Louis L. Javell and Aysha M. Arroyo, were indicted on two counts of wire fraud, pursuant to 18 U.S.C. § 1343, for their participation in a scheme to defraud Countrywide Bank ("Countrywide") by submitting fraudulent mortgage-loan applications. A jury found both Defendants guilty on both counts.

Presently before the Court is Javell's *Motion for a New Trial* and *Defendant Aysha Arroyo's Motion for New Trial*. Javell raises two arguments in his Motion: (1) that the evidence was insufficient to support his conviction and (2) that the Court erred in granting a pretrial motion to bar the admission of Arroyo's post-arrest statement. Arroyo adopts Javell's sufficiency-of-the-evidence argument and presents two additional arguments: (1) that the Court erred by precluding Arroyo from presenting any evidence of entrapment at trial and (2) that the cumulative effect of the Court's limitation on cross-examination denied Arroyo a fair trial.

## BACKGROUND

The Federal Bureau of Investigation and the Department of Housing and Urban Development, Office of Inspector General, conducted an undercover operation in which a cooperating individual ("CI") posed as someone who wished to procure mortgage loans on behalf of nominee buyers; sell property to those buyers; and pocket the sales proceeds, knowing the loans would go into default. As part of this investigation, residences owned by the Government – including a property at 2853 West Everett Street in Blue Island, Illinois (the "Everett Street property") – were deeded to fictitious identities. The CI and undercover agents represented to targets of the investigation that they controlled those identities and that they were in a position to secure fraudulent mortgage loans from lenders.

Javell was a mortgage broker and the owner of Bell Capital Real Estate, Inc. ("Bell Capital"), a mortgage-brokerage company. Arroyo worked as a loan processor at Bell Capital.

## LEGAL STANDARD

Both Defendants style their motions as motions for a new trial. Such motions are governed by Rule 33, which provides: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "[T]he exercise of power conferred by Rule 33 is reserved for only the most 'extreme cases.'" *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998) (quoting *United States v. Morales*, 902 F.2d 604, 606 (7th Cir. 1990)). The evidence must "preponderate heavily against the verdict, such that it would be a miscarriage of

justice to let the verdict stand." *United States v. Reed*, 875 F.2d 107, 111 (7th Cir. 1989) (*Reed*) (quoting *United States v. Martinez*, 763 F.2d 1297, 1312-13 (11th Cir.1985)).

Although they do not specifically invoke Rule 29, by arguing that the evidence was insufficient to support the verdicts against them, it appears that Defendants may be attempting to renew the motions for acquittal that were previously denied at trial. For a motion for judgment of acquittal, the court must examine the evidence as it was introduced at trial in the light most favorable to the prosecution and determine whether it was sufficient for a reasonable jury to convict. *Id.* at 111. The court does not re-weigh the evidence or judge the credibility of witnesses. *United States v. Galati*, 230 F.3d 254, 258 (7th Cir. 2000). "As long as there is a reasonable basis in the record for the jury's verdict, it must stand." *Id.* "Rule 29(c) does not authorize a judge to play thirteenth juror." *United States v. Genova*, 333 F.3d 750, 757 (7th Cir. 2003).

## ANALYSIS

### *Sufficiency of the Evidence*

Javell asserts that the Government failed to prove its case beyond a reasonable doubt. Arroyo joins in the argument. Neither Javell's nor Arroyo's arguments contain a single citation to any authority.

Javell presents only one specific argument as to why he believes the evidence was insufficient to support his conviction. The argument is somewhat vague and

underdeveloped, but it appears that Javell is asserting that Countrywide approved the loan in question without any regard for any falsely created bank account.[1]

Javell acknowledges evidence that a loan applicant went to Blue Capital and filled out an application, seeking a mortgage loan from Countrywide (Government Exhibit 24A); that Countrywide reviewed the application and decided to reject it based on the fact that the applicant's bank account had not been opened for sixty days; and that Defendants informed the applicant that the application would be rejected and made statements to persuade him into establishing another bank account that would falsely indicate he had access to funds in this account for more than sixty days.

Notwithstanding that evidence, Javell argues that Countrywide nonetheless approved the loan on the original application, which listed only the bank account that had been open for less than sixty days. He states, "Javell (or Arroyo) may have made statements to encourage the loan applicant to establish an allegedly fraudulent bank account that was opened in excess of 60 days; however, this bank account was not known to Countrywide and was not the financial security or reason upon which Countrywide 'gave out' loan money to the loan applicant (Government Exhibit 25A)." Javell's Mot. for New Trial ¶ 13. Thus, he seems to acknowledge evidence of the fraudulent activity while arguing that that activity did not in fact influence Countrywide's decision to grant the loans.

---

[1] Javell also states, "There was not any conduct (as opposed to statements) that the Defendant Javell committed that established proof beyond a reasonable doubt that he committed the instant charge of mail fraud." Javell's Mot. for New Trial ¶ 14. Javell cites no authority for his apparent proposition that a conviction for wire fraud requires conduct other than statements.

4

Even if Javell's argument was factually correct, reliance, on the part of the victim, is not an element of the offense with which Defendants were charged and convicted. Defendants were charged with two counts of wire fraud, based on the efforts to procure two separate mortgage loans for the same property. The statute provides as follows:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343. At trial, the jury was instructed that the Government had to prove the following elements:

> First, that the defendant you are considering knowingly devised or participated in a scheme to defraud or to obtain money or property by means of materially false pretenses, representations or promises, as described in the indictment;
>
> Second, that the defendant you are considering did so knowingly and with the intent to defraud; and
>
> Third, that for the purpose of carrying out the scheme or attempting to do so, the defendant used or caused the use of interstate wire communications to take place in the manner charged in that count of the indictment.

*See* Docket No. 107, at 29.

The Government has liberally construed Defendants' argument as one directed to the *materiality* of Defendants' false statements – i.e., because Countrywide issued a loan based on an application that did not contain any false bank-account information, the submission of such false information was not material.

However, even under this liberal construction, Defendants' argument is lacking in evidentiary support. The parties agree that Exhibit 24A lists a bank account for the

5

fictitious applicant that had been opened for less than sixty days. However, contrary to Defendants' representations, Exhibit 25A, cited by Defendants, in no way demonstrates – or even suggests – that Countrywide approved the loan application identified as Exhibit 24A. Indeed, Exhibit 25A does not demonstrate approval of *any* loan; rather, it is simply another *application* for a loan. The document is titled, "Uniform Residential Loan Application"; it lists $30,000 as the requested loan amount; identifies the Everett Street property as the subject property; indicates that the property is subject to another mortgage in the amount of $120,000; and lists one savings account, containing $4,967 – there is no indication as to the date on which that account was opened. A signature of Emad A. Adham (the fictitious identity of the government agent) appears as the borrower, dated August 1, 2007.

As noted by the Government, approval of the $120,000 loan *is* shown in another exhibit: Government Exhibit 24I. The face of that document, which is titled, "Loan Approval for Emad Adham (Loan # 171762184)," indicates that a verification of deposit showing two months' average was "pending reverification." Thus, Exhibit 25A in no way supports Defendants' argument that the evidence against them was insufficient; and the remaining evidence against them – including Government Exhibit 24I – is sufficient to support their conviction.

*Admission of Arroyo's Post-Arrest Statement Against Javell*

Javell also asserts that the Court erred by denying his pretrial motion to bar a post-arrest statement made by Arroyo, in which Arroyo positively identified her voice on certain recordings made as part of an undercover investigation and confessed to the

6

following: (1) that Abraham Skaff, a CPA, would bring clients to Bell Capital to apply for mortgages; (2) that Arroyo knew that some of the tax returns and subsequent documents provided by Skaff and his customers were fraudulent; and (3) that she had utilized the services of someone at Harris Bank, who would back date verification of deposits.

Javell's argument is based on *Bruton v. United States*, 391 U.S. 123 (1968) (*Bruton*), in which the Supreme Court held that a defendant is deprived of his Sixth Amendment right of confrontation when a facially incriminating out-of-court statement from a nontestifying codefendant is introduced at their joint trial – even when the jury is provided with a limiting instruction:

> There are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial.

*Bruton*, 391 U.S. at 135-136.

Later, in *Richardson v. Marsh*, 481 U.S. 200, 209 (1987) (*Richardson*), the Court held "that the Confrontation Clause is not violated by the admission of a non-testifying codefendant's confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." The *Richardson* Court stated that it expressed "no opinion on the admissibility of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun." *Id.* That issue was later addressed in *Gray v. Maryland*,

523 U.S. 185 (1998) (*Gray*). In that case, defendant Bell gave a confession in which he said that he, Gray, and another man had participated in the beating that resulted in the death of the victim Stacy Williams. *Id.* at 188. Gray and Bell were tried jointly. *Id*. At trial, a witness read a redacted version of Bell's confession as follows: "Question: Who was in the group that beat Stacy? Answer: Me, deleted, deleted, and a few other guys." *Id.* at 197. The Court held this to be a violation of the defendant's right of confrontation, stating that "considered as a class, redactions that replace a proper name with an obvious blank, the word 'delete,' a symbol, or similarly notify the jury that a name has been deleted are similar enough to *Bruton's* unredacted confession as to warrant the same legal results." *Id.* at 195.

Following those Supreme Court cases, the Seventh Circuit has held that redacted confessions are admissible when, on their face, they do not obviously implicate the codefendants:

> After *Richardson* and *Gray*, it is clear that a redacted confession may be admitted as long as the redaction does not obviously refer to the co-defendants. In *Gray* . . . the Court insinuated that one-to-one correspondence between the inserted terms and the co-defendants at issue makes the reference more obvious and thus more problematic. In decisions since *Gray* and *Richardson*, we have used this one-to-one correspondence as a factor in our efforts to determine if the redacted confession too obviously refers to the co-defendants.

*United States v. Hernandez*, 330 F.3d 964, 973 (7th Cir. 2003) (*Hernandez*).

Here, pursuant to a pretrial motion by Javell, every reference to Javell or Blue Capital was omitted, and nothing was left in their place to indicate that a redaction

was made.[2] Thus, Arroyo's statement was not facially incriminating as to Javell. Nor did any of the redacted portions run afoul of *Gray* because Javell's name is not being replaced with a symbol or neutral pronoun.

Bell Capital had less than five employees including Arroyo. Although every reference to Bell Capital was also omitted, Javell argues that the Government's redacted version is a violation of *Richardson* because a jury could not believe that Arroyo submitted fraudulent tax returns and fraudulent documents to a lender without Javell's knowledge and approval. This argument is unpersuasive for two reasons. First, Arroyo's statement reveals that she received cash and gifts from clients, thereby demonstrating an independent motive to commit fraud. Second, it remains that her *statement* is not one that "expressly implicates" Javell, *see Hernandez*, 330 F.3d at 972 (quoting *Bruton*, 391 U.S. at 124 n.1), or "facially incriminate[s]" Javell, *see id.* (citing *Richardson*, 481 U.S. at 211). Any evidence regarding Arroyo's role at Bell Capital, the size of the business, and the number of employees came, not from her statement, but from the testimony of witnesses at trial who were subject to cross examination. Moreover, the jury was instructed that they should consider Arroyo's statements only against Arroyo. To the extent Javell's Motion for a New Trial is based on the Court's denial of his pretrial motion to bar the admission of Arroyo's statement, the motion is denied.

---

[2] Following a hearing on June 23, 2010, the Court ordered the Government to file a redacted version of Arroyo's statement. *See* Docket No. 80. The Government filed an edited version, which shows the redactions (Docket No. 81), and a complete, redacted version (Docket No. 84). Neither Javell nor Blue Capital are mentioned in the redacted statement.

9

### Preclusion of Arroyo's Purported Entrapment Defense

Arroyo asserts that the Court erred in not allowing her to assert the defense of entrapment at trial. One week before trial, Arroyo filed a notice of her intent to assert a defense of entrapment, stating the following in support: "Other than Defendant and agents of the Government, the Defendant will not call any witnesses to support this defense." Docket No. 95. The Government responded with a motion *in limine* to preclude Arroyo from asserting that defense unless she could make a sufficient pretrial evidentiary proffer. Relying, in part, on *United States v. Blassingame*, 197 F.3d 271 (7th Cir. 1999) (*Blassingame*), the Government specifically argued that Arroyo should be required to make a pretrial proffer in which she made a *prima facie* case that she was not predisposed to commit the charged offense. The motion was conditionally granted: the Court's order stated that if Arroyo failed to provide any evidence in support of her entrapment defense prior to the start of trial, she would be precluded from raising that defense at the time of trial.

In response, Arroyo filed an "Offer of Proof" in which she stated that the CI called her "sweetie" and offered her a few hundred dollars at closing. *See* Docket No. 103. Arroyo's counsel stated that he wanted to "explore" whether this offer was a bribe or a gift for her rapid services. He also wanted to "pursue" the issue as to whether Arroyo was "cajoled" into signing the government agent's name for him. The document did not contain a proffer of any specific evidence regarding inducement. Nor did it contain any representation that Arroyo was not predisposed to commit the fraud.

The affirmative defense of entrapment requires a defendant to prove two elements: (1) "government inducement of the crime" and (2) "a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Blassingame*, 197 F.3d at 280 (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1998)). The defendant must establish more than a scintilla of evidence in support of her defense. *Id.* A defendant must make a sufficient proffer of her defense ***before*** presenting it to the jury:

> [A]s a *prerequisite* for presenting the defense of entrapment to the jury, the defendant must produce sufficient evidence upon which a rational jury could have inferred that he was entrapped into committing the crime charged. Only if a defendant meets this threshold burden is he entitled to present the question of entrapment to the jury for resolution.

*Id.* (citing *United States v. Santiago-Godinez*, 12 F.3d 722, 727 (7th Cir. 1993) (emphasis added in *Blassingame*).

The *Blassingame* court stated that the defendant's failure to proffer entrapment evidence in response to the government's motion *in limine* provided sufficient grounds for the court to grant the government's motion and preclude the defendant from making an entrapment defense at trial. *Id.* at 279.

Even now, Arroyo fails to identify *any* evidence that would support a defense of entrapment. She simply reaffirms her position that she was "sweet talked and cajoled along in the development of the loan transaction by the Government's paid fraudster." Docket No. 119 ¶ 3. But it is not enough to be "sweet talked" or "cajoled." Entrapment involves the inducement of a law-abiding citizen to commit a crime "only by grave threats, by fraud (the police might persuade him that the act they want him to commit is not criminal), or, in the usual case in which entrapment is pleaded, by extraordinary

11

promises – the sorts of promises that would blind the ordinary person to his legal duties." *United States v. Evans*, 924 F.2d 714, 717 (7th Cir. 1991) (*Evans*) (citations omitted). The *Evans* court provides an example: "[I]f the police offered a derelict $100,000 to commit a minor crime that he wouldn't have dreamed of committing for the usual gain that such a crime could be expected to yield, and he accepted the offer and committed the crime, that would be entrapment." *Id.* The fact that Defendants were targeted in a Government sting does not mean that they were entrapped. *See United States v. Morris*, 549 F.3d 548, 551 (7th Cir. 2008) ("Stings are schemes for getting a person who is predisposed to criminal activity to commit a crime at a time or place in which he can be immediately apprehended; they are an essential tool of law enforcement against crimes that have no complaining victim. Entrapment refers to the use of inducements that cause a normally law-abiding person to commit a crime, and is a defense when the entrapment is conducted by law enforcement officers or their agents."); *see also Sherman v. United States*, 356 U.S. 369, 372 (1958) ("To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal.").

Here, Arroyo has failed to make any showing that she was not predisposed to commit mortgage fraud. The Court finds no error in granting the Government's motion *in limine* to preclude Arroyo from offering an entrapment defense.[3]

## Limits on Cross-Examination

Arroyo's final argument is that the Court inhibited her attempt to develop proof that she had been tricked into doing what government agents wanted her to do. Specifically, she argues that the Court cut off some of her counsel's questions as "asked and answered" even though it was *Javell's* counsel who had previously asked them. She does not elaborate further. "Trial courts may impose reasonable limits on cross-examination based on concerns about harassment, prejudice, confusion of the issues, a witness' safety, or questioning that is repetitive or marginally relevant." *United States v. Sanders*, 614 F.3d 341, 344 (7th Cir. 2010). Arroyo has not identified any specific questions that were prevented from being answered; nor has she explained how she would have obtained a different answer than what was elicited by Javell's counsel or even what those answers would have been or how those answers could have materially affected the verdict. She now states that she does not have the benefit of trial transcripts and purports to request those transcripts in her motion. She did not previously complete a CJA 24 Form or otherwise make a proper request to obtain the transcripts. In any event,

---

[3] Indeed, Arroyo's own post-arrest statement revealed that she had accepted gifts from clients and that she told a client she knew a banker who could open a new account and back date it to make it appear that it had been open for longer. In light of the Court's pretrial ruling on the Government's motion *in limine*, the issue of whether this could be considered by the Court, or presented to the jury, on the question of predisposition was never reached.

13

she has presented nothing to suggest that justice requires a new trial on the basis of evidence that she was not permitted to elicit.

## CONCLUSION

For the reasons discussed above, Javell's Motion for a New Trial and Arroyo's Motion for New Trial are both denied.

Date: 5-13-11

JOHN W. DARRAH
United States District Court Judge